**RAVENCLIFFS DEVELOPMENT COMPANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 445.**

United States District Court
S. D. West Virginia.

Aug. 23, 1956.

Arthur F. Kingdon, Bluefield, W. Va., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe and James X. Kilbridge, Dept. of Justice, Washington, D. C., and Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., for defendant.

MOORE, Chief Judge.

Plaintiff is engaged in the business of exploring for gas, and of operating such wells as are found to be productive. During the years from 1924 to 1946, plaintiff followed the practice of charging the cost of drilling wells to capital accounts, and deducting annual depreciation on the tangible cost of such wells and depletion for the intangible costs. So far as the record discloses, no nonproductive well was drilled prior to the year 1946.

In the year 1946 plaintiff drilled a well designated as well No. 19 on one of its leases known as lease No. 3. This well proved to be nonproductive. During the time when it was being drilled the costs of drilling, both tangible and intangible, were charged to capital; but when the well was found to be dry the drilling cost was credited back to the capital account.

That part of the drilling cost which plaintiff designated as "Abandonment of Depreciable Portion of Gas Well No. 19" was charged to expense and claimed as a deduction on plaintiff's 1946 income tax return, in the amount of $2,629.04. This represented pipe which was used in the well and which for some reason could not be recovered from the well. The remainder of the cost of drilling well No. 19, which plaintiff designated as "Abandonment Drilling Costs, well No. 19," was charged directly to surplus and was not claimed as a deduction from income, but was listed on plaintiff's 1946 tax return under the heading "Other Unallowable Deductions," in the amount of $13,806.

Plaintiff drilled no further nonproductive wells until the year 1951, when well No. 32 was drilled on lease No. 1, at a cost of $22,166.19. The drilling costs on this well were also initially charged to capital; but when the well was found to be dry the total cost was charged to expense, and a deduction was claimed on plaintiff's income tax return for that year, designated "Abandonment of Unproductive Well No. 32." Likewise, in 1952, two unproductive wells were drilled on lease No. 1, being designated as wells No. 30 and No. 31. The total cost of these wells, amounting to $39,397.09, was treated in the same way; that is, it was first charged to capital, and then taken out of capital, charged to expense, and claimed as a deduction on plaintiff's tax return for 1952, designated "Abandonment of Unproductive Gas Wells No. 30 and No. 31."

The District Director of Internal Revenue refused to allow the deductions claimed for 1951 and 1952 by reason of the costs of the nonproductive wells drilled in those years, basing his ruling on the conclusion that plaintiff had not, on its 1946 tax return, given a clear indication of an election to deduct as ordinary losses such drilling and development costs, thereby (according to the Director of Internal Revenue) bringing into effect, by virtue of the pertinent regulation, an irrevocable election to recover such costs only through depletion and/or deprecia-

tion. In April, 1955, additional income taxes and interest were assessed against plaintiff in the total amount, for the years 1951 and 1952, of $24,777.13. These assessments were paid by plaintiff on April 27, 1955, accompanied by notice of intent to file claims for refund. The claims for refund were filed on June 6, 1955.

All the pertinent facts have been stipulated.

The applicable statute and regulation are as follows:

"Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(m) *Depletion.* In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary." 26 U.S.C. 1952 ed., § 23

"*Charges to Capital and to Expense in Case of Oil and Gas Wells.—*

\* \* \* \* \*

"(b) *Taxable years beginning after December 31, 1942.*—The provisions of this subsection apply only to taxable years beginning after December 31, 1942.

\* \* \* \* \*

"(2) Recovery of optional items, if capitalized:

\* \* \* \* \*

"(iv) Option with respect to cost of nonproductive wells: If the operator has elected to capitalize intangible drilling and development costs, then an additional option is accorded with respect to intangible drilling and development costs incurred in drilling a nonproductive well. Such costs incurred in drilling a nonproductive well may be deducted by the taxpayer as an ordinary loss provid-ed a proper election is made in the return for the first taxable year beginning after December 31, 1942, in which such a nonproductive well is completed. Such election with respect to intangible drilling and development costs of non-productive wells is a new election, and, when made, shall be binding for all subsequent years. Any taxpayer who incurs optional drilling and development costs in drilling a nonproductive well must make a clear statement of election under this option in the return for the first taxable year beginning after December 31, 1942, in which such nonproductive well is completed. The absence of a clear indication in such return of an election to deduct as ordinary losses intangible drilling and development costs of nonproductive wells shall be deemed to be an election to recover such costs through depletion to the extent that they are not represented by physical property, and through depreciation to the extent that they are represented by physical property." Treasury Regulations 111, (Promulgated under Internal Revenue Code of 1939) Sec. 29.23 (m)–16.

The corresponding parts of Sec. 39.23 (m)–16 of Treasury Regulations 118 applicable for the years 1952 and 1953 are approximately the same as the section set out above from Treasury Regulations 111.

Plaintiff advances five points in arguing that it is entitled to a refund of the taxes paid: 1) that it has never had an opportunity to make an election pursuant to the regulation; 2) that leases No. 3 and No. 1 are separate properties, and that consequently plaintiff's election (if it made an election) with reference to a nonproductive well on lease No. 3 would not have bound plaintiff with reference to its treatment of the cost of nonproductive wells on lease No. 1; 3) that there was a clear indication on its income tax return for 1946 of an election to deduct the costs in question as ordinary

losses; 4) that regulation 29.23(m)–16 (b) is a nullity; and 5) that defendant's position is inequitable.

I find it unnecessary to pass on points numbers 1, 2, 4 and 5, because I am of opinion that under the circumstances disclosed in the stipulation of facts, in the light of the income tax returns which are exhibited in evidence, plaintiff did, on its income tax return for the year 1946, indicate clearly that it elected to deduct the intangible drilling and development costs of nonproductive wells as ordinary losses. This conclusion is inescapable when the following facts are taken into consideration:

a. Plaintiff deducted as an ordinary loss on its 1946 income tax return that part of the cost of drilling nonproductive well No. 19 which represented tangible costs; that is, the cost of pipe which was abandoned in the well.

b. Plaintiff listed on its income tax return for 1946 as an unallowable deduction the remainder of the cost of drilling well No. 19, designated in the stipulation as an "intangible loss of $13,-806.00."

c. It had been the undeviating practice of plaintiff throughout the period of its operation to capitalize productive wells, and to secure tax deductions by way of depletion and/or depreciation.

■ The purpose of regulation 29.23 (m)–16(b) 2(iv), requiring an election as between depreciation on the one hand and deduction as an ordinary loss on the other with reference to nonproductive wells, is not that the government may be bound by such election, but that the taxpayer may be bound. It would be an unfair advantage in favor of the taxpayer if he were left free to decide between the two methods of taking such deductions as each situation might arise, because in that event he could take the deduction as an expense, or ordinary loss, where it might be to his interest to do so, and capitalize the cost when his interest lay in that direction. Hence, he is required to elect which method he will use when the first nonproductive well is finished.

He is not, however, required to make his election by any set form. Indeed, the regulation contemplates that election may be inferred merely from the manner in which the taxpayer reports the figures; else why the expression, "absence of a clear *indication*"? If the *indication* is clear enough to reveal an election to deduct the costs as ordinary losses, the purpose of the regulation is fulfilled.

■ In the case before me I see only one indication, and that indication is clear. The taxpayer deducted that part of the cost of well No. 19 which it believed was deductible as an ordinary loss, and listed as a nonallowable deduction that part which it did not believe to be a proper deduction as an ordinary loss. In doing so, the taxpayer, as shown by its 1946 income tax return, paid approximately $3,000 in taxes for that year which it need not have paid had it known that the intangible drilling costs of nonproductive well No. 19 were properly deductible as ordinary losses; and at the the same time provided for itself no means of securing a later deduction through depreciation or depletion. While the government is of course not chargeable with the taxpayer's failure to inform itself of its right to these deductions in 1946, yet the facts show me beyond doubt that it was the intention of the taxpayer to deduct these costs as ordinary losses to the extent to which it believed they were deductible; and that had the taxpayer known that the intangible costs were also deductible as ordinary losses, they would also have been deducted. In other words, a clear intention is shown not to capitalize such costs, but to deduct them as ordinary losses.

Being of opinion that plaintiff complied with the regulation in giving a clear indication of its election to deduct intangible drilling and development costs of nonproductive wells as ordinary losses, I hold that the refusal of the Director of Internal Revenue to allow the deductions for the years 1951 and 1952 was unwarranted, and that plaintiff is entitled to recover the amount paid by reason of the illegal assessments, with interest.

Included in plaintiff's claim is an item of $683.82 plus interest of $44.50, which is allocated to the year 1953. No evidence has been presented, and there is nothing in the stipulation of fact, which provides a basis for the recovery of these items. They should therefore be eliminated from plaintiff's claim.

Counsel will prepare for entry a suitable order in accordance with the foregoing opinion.